John P. BOREL, Appellant,

v.

UNITED STATES CASUALTY COMPANY, Appellee.

No. 15881.

United States Court of Appeals
Fifth Circuit.

May 15, 1956.

Rehearing Denied June 13, 1956.

W. J. Kronzer, Jr., Frank Abraham, Houston, Tex., Hill, Brown, Kronzer & Abraham, Houston, Tex., of counsel, for appellant.

Charles M. Haden, Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., for appellee.

. Before HUTCHESON, Chief Judge, and TUTTLE and CAMERON, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal from a directed verdict for the defendant in an action for workmen's compensation benefits under the Texas Workmen's Compensation Act, Vernon's Rev.Civ.St. Art. 8306 et seq. The plaintiff originally filed a claim for compensation benefits with the Industrial Accident Board of Texas, and was awarded $400 for total disability for sixteen weeks. Thereafter, he filed notice of dissatisfaction with this award, and brought suit in the district court of Harris Coun-

ty, Texas, against his employer's insurance carrier. The defendant removed the case to federal district court, and answered, admitting that the plaintiff was within the scope of employment when the injury occurred. Upon taking the plaintiff's deposition, however, the defendant amended its answer so as to withdraw this admission and deny that the plaintiff was hurt in the course of employment, and the case went to trial principally upon this issue and on the extent of the plaintiff's injury. The trial court, at the conclusion of the plaintiff's case, directed a verdict for the defendant on the ground that there was insufficient evidence to support a finding that the plaintiff was within the scope of employment at the time of the accident. The plaintiff appeals, asserting that either the admission in the superseded answer or the evidence adduced at the trial would support such a finding.

At the trial, the plaintiff testified that he was injured on August 28, 1953, when he was sent by his employer to "flash," or put a sheet metal guard around, a chimney flue at 17 Shadow Lane, Houston. It rained during the morning, so that the plaintiff stayed in the shop until about the noon hour. Then he and his helper, Calvin Hamblin, left in the company truck to construct this guard and another at a nearby address. When they arrived at 17 Shadow Lane, however, two other men were on the roof, and appeared to be already doing the work. They thereupon proceeded to the next job, where they found that the roof had not yet been put on the house under construction, so that it was impossible to work on the chimney there.

They returned to the first address, and the two other workmen having come down from the roof, the plaintiff approached them and said, "We were sent down here to flash a flue." The other sheet metal mechanic, an employee of the Johnson Material Company, answered, "I was sent down here to flash the same flue. I have just about got it flashed." The plaintiff asked him if he needed any help, and the other mechanic replied that he was almost done with the job, but would like some help in getting his truck out of the mud. Hamblin, who was a good driver, got into the truck and tried to back it out himself, but was unsuccessful. The others then found a pine pole about twelve feet long and five inches in diameter, and began helping to get the front wheels out of the mud by placing it under the front bumper and lifting up. At one time during which they were raising up the truck, the plaintiff felt something pop in his back. He was of little help thereafter in freeing the truck, or in working for the rest of that day, and eventually was forced to give up sheet metal work because of extreme pain in his back and legs whenever he bent or lifted. At the trial, expert medical testimony was offered to show that the plaintiff by his exertions in helping to lift the truck suffered a ruptured disc, which will permanently disable him from performing heavy manual labor.

The plaintiff testified that he was not censured by his employer when he reported the cause of his injury. Other testimony was to the effect that sheet metal workers customarily aid each other when working on the same job. There was also evidence that there is a custom in the sheet-metal trade for one employer, when overloaded with work, to subcontract some of it to other employers. However, there was no connection shown here between the plaintiff's employer and the Johnson Material Company, and the record does not disclose why both employers sent workers to the same job.

 The plaintiff's first contention is that he was entitled to go to the jury on the strength of the admission by the defendant in its original answer that he was acting within the scope of his employment at the time he was injured. A superseded pleading is of course not a conclusive admission of the statements made therein, and is not properly considered by a fact-finder unless introduced in evidence. Fruco Const. Co. v. McClelland, 8 Cir., 192 F.2d 241; Proctor &

Gamble Defense Corp. v. Bean, 5 Cir., 146 F.2d 598.[1] The plaintiff here offered in evidence the part of the original answer making the admission, and the statement could therefore have been considered by the jury in reaching a verdict, along with all the other evidence in the case. Kunglig Jarnvagsstyrelsn v. Dexter & Carpenter, 2 Cir., 32 F.2d 195; Evans v. Daniel, 9 Cir., 289 F. 335. Nevertheless, such an admission can be explained or controverted at the trial by the party filing it. Nisbet v. Van Tuyl, 7 Cir., 224 F.2d 66.

The original answer in this case was signed by counsel, and was apparently filed before they had sufficiently informed themselves of the facts regarding the accident. It was withdrawn after they took the plaintiff's deposition. Since there is no real conflict regarding the facts surrounding the accident—the plaintiff's explanation being considered true in all respects, at least for the purposes of the motion—the admission here seems in the nature of a legal conclusion rather than an admission of fact helpful in reconciling contradictory evidence. If the circumstances of the injury were disputed, such an admission would be an important factor in resolving the conflict in the evidence. To give much weight to it where the facts are uncontroverted would, however, place too great an emphasis on the formalities of pleading and run counter to the policy of the Federal Rules. Rule 8(f), Fed.Rules Civ.Proc. 28 U.S.C.A.

With regard to the evidence introduced at the trial, the plaintiff does not contend that any contractual relationship in fact existed between his employer, the Stone Company, and the Johnson Material Company.[2] He asserts, however, that the existence of the custom of sub-contracting in the industry justified his assuming that the Johnson Material Company was a subcontractor when he encountered its employees on the job. He also argues that the custom of mutual assistance in the sheet-metal industry between workers on the same job is sufficient to show that he was within the scope of his employment in helping out another worker, completely aside from his assumption of a subcontract between their employers.

The existence of the custom is said to bring this case within the rule of those decisions holding that efforts to start a car in which employees are to ride from work are within the scope of employment. Employers Mut. Liability Ins. Co. of Wisconsin v. Konvicka, 5 Cir., 197 F.2d 691; Federal Surety Co. v. Ragle, Tex.Com. App., 40 S.W.2d 63. However these holdings are based on the altogether different reasoning that such efforts are in furtherance of an employer's business because their purpose is to provide transportation from work for the company's own employees. Borel's aiding the Johnson Material Company employee here cannot be so regarded, and is justifiable as a furtherance of his employer's business only on a good will basis. Moreover, the reasonableness of Borel's assuming the existence of a subcontract is not relevant to the question, because neither the Act itself nor any decisions to which we have been cited make reasonable assumptions controlling when the facts are otherwise.

Good will assistance has been regarded within the scope of employment in some situations,[3] but has not been so held under Texas law, even when rendered to co-employees. Holditch v. Standard Acc. Ins. Co., 5 Cir., 208 F.2d

---

1. The Sixth Circuit has arrived at a different conclusion on the theory that a court can take judicial notice of its own records. Pennsylvania R. Co. v. City of Girard, 6 Cir., 210 F.2d 437.

2. The plaintiff states in his reply brief, p. 3: "We have never asserted that a contractual relationship *in fact* existed between Mr. Borel's employer and George's employer, but we do assert that the record clearly supports the inference that these two men did not understand why they had both been sent to perform the same work and, again contrary to Appellee's contention, Mr. Borel never has KNOWN to the contrary." (Emphasis in original.)

3. See 1 Larson's Workmen's Compensation Law, § 27.22(a).

721; Central Surety & Insurance Corp. v. Howard, 5 Cir., 47 F.2d 1049. The rule is even stricter with regard to help rendered to third persons, as where the employee was riding to work with the third person at the time of the injury. Safety Casualty Co. v. Wright, 138 Tex. 492, 160 S.W.2d 238.

The question whether an employee was within the scope of employment when injured is a question of fact. Hooper v. Great American Indemnity Co., 5 Cir., 102 F.2d 739; Hicks v. Georgia Casualty Co., 5 Cir., 63 F.2d 157. In determining whether a directed verdict was properly given, we must indulge all reasonable inferences in favor of the party against whom the verdict was directed. Strawn v. Travelers Ins. Co., 5 Cir., 200 F.2d 778. The uncontroverted facts in the instant case plainly show, however, that the plaintiff was injured when he had departed from his course of employment and was engaged in a good will mission of his own. Under such circumstances, the motion for an instructed verdict was correctly granted.

The judgment is

Affirmed.